```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
-----------------------------------

LOVADO ADAMS,

                Plaintiff,

    - against -

CITY OF NEW YORK, ET AL.,

                Defendants.

-----------------------------------

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/2/10
```

08 Civ. 5263 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    The plaintiff, Lovado Adams, brought this action against defendants the City of New York, the New York City Police Department, Police Officer Fred Washington, Sergeant Victor Otero ("City defendants"), and Genaro and Rosa Castillo ("Castillo defendants"). The plaintiff's complaint includes false arrest and excessive force claims against the City defendants pursuant to 42 U.S.C. § 1983, in addition to state law claims of assault and battery, intentional infliction of emotional distress, negligent hiring, and negligence. The complaint alleges similar claims against the Castillo defendants. The City defendants move pursuant to Federal Rule of Civil Procedure 56 to dismiss the claims against the City defendants.

I

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S.

2

242, 248 (1986); see also Grant v. Pathmark Stores, Inc., No. 06 Civ. 5755, 2009 WL 2263795, at *1 (S.D.N.Y. July 29, 2009).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998) (collecting cases); Grant, 2009 WL 2263795, at *1.

II

The following facts are undisputed unless otherwise noted.

In July 2007, defendants Genaro and Rosa Castillo worked at the Food Mart Grocery Store in the Bronx. (Defs.' 56.1 Statement ¶ 1; Pl.'s 56.1 Statement ¶ 1.) The store was owned by Rosa Castillo's aunt. (Defs.' 56.1 Statement ¶ 1; Pl.'s 56.1 Statement ¶ 1.) The plaintiff occasionally did odd jobs around the store and was paid either in cash or with goods from the store. (Defs.' 56.1 Statement ¶¶ 2-3; Pl.'s 56.1 Statement ¶¶ 2-3.) The plaintiff alleges that the Castillos operated an illegal numbers game from the store and that the plaintiff purchased illegal tickets on occasion. (Pl.'s 56.1 Statement ¶¶ 5-6.) On July 24, 2007, the plaintiff entered the store and requested that she be paid for an allegedly winning lottery ticket that she did not have with her. (Defs.' 56.1 Statement ¶¶ 7-8; Pl.'s 56.1 Statement ¶¶ 7-8.) She discussed the ticket with Genaro Castillo and eventually was involved in a physical altercation with the Castillos. (Defs.' 56.1 Statement ¶¶ 9, 11-12; Pl.'s 56.1 Statement ¶¶ 9, 11-12.)

The plaintiff alleges that Rosa Castillo entered the store and began screaming at the plaintiff concerning the dispute over the ticket. (Pl.'s 56.1 Statement ¶ 10; Tr. of Deposition of Lovado Adams ("Adams Dep."), attached to Eze Decl., at 50.) The plaintiff claims that the Castillos then assaulted her and held her "hostage" in the back of the store. (Pl.'s 56.1 Statement ¶¶ 10-12; Adams Dep. at 51-52.)

4

The City defendants, on the other hand, point to the Castillos' testimony that the plaintiff was the aggressor. (Defs.' 56.1 Statement ¶ 10; Weiss Decl. Ex. D at 12, Ex. E at 11-15.) The Castillos claim that the plaintiff attempted to grab Rosa Castillo when she entered the store and that Genaro Castillo intervened to protect his wife. (Weiss Decl. Ex. E at 11-12.) Mr. Castillo testified that the plaintiff scratched him as he tried to stop the plaintiff from grabbing his wife and that he then blocked the plaintiff from following his wife behind the store counter. (Weiss Decl. Ex. E at 11-15.) The parties agree that Rosa Castillo called 911 and the police arrived. (Defs.' 56.1 Statement ¶¶ 13-14; Pl.'s 56.1 Statement ¶¶ 13-14.)

The parties dispute whether Officer Washington was one of the officers who responded and whether he arrested the plaintiff. The plaintiff alleges that Officer Washington was not at the scene and that she first met him at the police stationhouse. (Pl.'s 56.1 Statement ¶¶ 15-16, 18; Adams Dep. 72.) She also claims that the officers who arrested her were "white or Hispanic officers," while Officer Washington is black. (Adams Dep. 60, 72.)

The City claims that Officer Washington arrested the plaintiff after interviewing her and the Castillos about what had occurred. (Defs.' 56.1 Statement ¶¶ 15, 22-24.) The City

5

claims that the Castillos told Officer Washington that the plaintiff first attacked Mrs. Castillo and then Mr. Castillo when he attempted to protect his wife. (Defs.' 56.1 Statement ¶ 16.)  The City alleges that Mr. Castillo then showed Officer Washington scratches on his neck and a tear in his shirt as a result of the incident. (Defs.' 56.1 Statement ¶ 16.) The plaintiff claims that she told the police officer who interviewed her that the Castillos attacked her and locked her in the back of the store. (Defs.' 56.1 Statement ¶ 17; Pl.'s 56.1 Statement ¶ 17.)

Officer Washington testified that he interviewed both the Castillos and the plaintiff. (Weiss Decl. Ex. B at 12, 18, 20-21.) Officer Washington testified that after conferring with Sergeant Otero, who agreed that the plaintiff should be arrested, he placed the plaintiff under arrest. (Weiss Decl. Ex. B at 67-68.) Indeed, Officer Washington is listed as the arresting officer on the arrest report. (Weiss Decl. Ex. I.) Sergeant Otero testified that he verified Officer Washington's arrest of the plaintiff. (Weiss Decl. Ex. C at 31-32.) The plaintiff does not contest Sergeant Otero's presence at the scene.

The plaintiff filed a notice of claim in this case on December 29, 2007. (Defs.' 56.1 Statement ¶ 34; Pl.'s 56.1 Statement ¶ 34.)

III

A

First, the City defendants move to dismiss the plaintiff's § 1983 claim alleging that the police used excessive force against her.  The City defendants argue that the plaintiff admitted in her deposition that it was the Castillo defendants who allegedly used force against her, not the police officers.  (Defs.' 56.1 Statement ¶ 36.)  The plaintiff admits this as an undisputed fact and offers no opposition to the motion for summary judgment.  (Pl.'s 56.1 Statement ¶ 36.)  Therefore, the motion for summary judgment dismissing the plaintiff's excessive force claim is **granted**.

Second, the City defendants argue that the New York City Police Department is not a suable entity because it is an agency of the City of New York.  The plaintiff offers no response and the City defendants are correct that the Police Department cannot be sued.  See Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007).  Therefore, the motion for summary judgment dismissing the plaintiff's claims against the New York City Police Department is **granted**.

B

Next, the City defendants argue that the plaintiff's § 1983 claim for false arrest should be dismissed because the police officers had probable cause to arrest the plaintiff.

To prevail on her § 1983 claim, the plaintiff must show that she was deprived of a right secured by the Constitution or the laws of the United States and that the deprivation was caused by a person acting under the color of state law. See Gomez v. Toledo, 446 U.S. 635, 640 (1980); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). Furthermore, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1952 (2009). Personal involvement can be established by showing that a defendant "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring." Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).

In this case, the plaintiff argues that she was falsely arrested without probable cause. There is no dispute that the right not to be arrested without probable cause is a federal constitutional right protected by the Fourth Amendment. See, e.g., Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). There is also no dispute that the police officers who arrested the plaintiff did so under the color of state law.

As discussed above, there is a dispute as to whether Officer Washington was personally involved in the plaintiff's arrest. In this case, the plaintiff makes the unusual argument that Officer Washington was not personally involved. At oral argument, counsel for the plaintiff continued to advance this argument. Counsel explained that the only reason that Officer Washington is named as a defendant in this case is that the City identified Officer Washington as the arresting officer.[1]

The plaintiff cannot bring a § 1983 claim against Officer Washington for false arrest while continuing to assert that Officer Washington did not arrest her. See Back, 365 F.3d at 122. Accepting the plaintiff's version of the facts as true, there is no plausible claim that Officer Washington violated the plaintiff's constitutional rights.

---

[1] The plaintiff initially filed her complaint on June 9, 2008, naming 10 "John Doe" police officers as defendants. The plaintiff eventually filed a second amended complaint on May 9, 2009, adding Police Officer Washington and Sergeant Otero as defendants.

9

Under the plaintiff's version of the facts, it is also unclear how Sergeant Otero was personally involved in her arrest. Both parties agree that Officer Washington was serving as Sergeant Otero's driver on the day of the arrest and that they were on patrol in the area of the Castillos' store when Rosa Castillo called 911. (Defs.' 56.1 Statement ¶ 14; Pl.'s 56.1 Statement ¶ 14.) In the plaintiff's statement of uncontested facts, the plaintiff notes that Officer Washington and Sergeant Otero both testified that other officers were on the scene at the store when they arrived. The plaintiff argues that, therefore, she "was already in custody of and placed under arrest by earlier arriving officers." (Pl.'s 56.1 Statement ¶ 24.) While the plaintiff's counsel stated at oral argument that the plaintiff did not contest that Sergeant Otero was at the store on the day of the plaintiff's arrest, she has not alleged that he personally participated in her arrest, supervised other officers who made the arrest, or was in a position to "exhibit[] deliberate indifference" to the plaintiff's allegedly false arrest. See Provost, 262 F.3d at 154.

In any event, even if Officer Washington and Sergeant Otero were personally involved in the plaintiff's arrest, which is what both police officers testified to, they had probable cause to arrest her. In analyzing § 1983 claims for false arrest, courts in this Circuit generally look to the law of the state in

10

which the arrest occurred. Davis v. Rodriguez, 364 F.3d 424, 433 & n.7 (2d Cir. 2004). In New York, probable cause is a complete defense to an action for false arrest. Burns v. City of New York, 791 N.Y.S.2d 851, 851 (App. Div. 2005). Probable cause exists if the arresting officer had "information sufficient to support a reasonable belief that an offense has been committed" by the person to be arrested. Id. at 852.

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from . . . the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted). Once an officer has a reasonable basis for believing there is probable cause, the officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Walczyk v. Rio, 496 F.3d 139, 160 (2d Cir. 2007) (internal quotation marks and citation omitted). "A finding of probable cause is not foreclosed where a police officer is presented with different stories from an alleged victim and arrestee." Drummond v. Castro, 522 F. Supp. 2d 667, 675 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). Even if an arresting officer would be entitled to believe the arrestee's version of contested events, instead of the purported victim's, the officer is not required

11

to do so.  See Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

In this case, Officer Washington testified that he interviewed both the plaintiff and the Castillos.  He testified that Mr. Castillo told him that the plaintiff attacked him when Mr. Castillo was attempting to protect his wife.  Officer Washington testified that he observed injuries on Mr. Castillo and saw Mr. Castillo's torn shirt, but that he did not observe injuries on the plaintiff.  (Weiss Decl. Ex. B at 23, 27.)  The plaintiff alleges that she was "bloodied and bruised."  (Pl.'s 56.1 Statement ¶ 21.)  Accepting the plaintiff's allegations as true, Officer Washington was faced with two people who appeared to have been in a fight and who made different claims about who was the aggressor.  Mr. Castillo's statement was supported by Mrs. Castillo's statement.  Under the circumstances, it was reasonable for Officer Washington to believe the Castillos' version of the events.  The plaintiff has not shown any reason why Officer Washington should have doubted the Castillos' veracity.  Even if Officer Washington would also have been entitled to believe the plaintiff's version of the events, he was not required to do so.  See Ricciuti, 124 F.3d at 128. Based on the Castillos' information and on Officer Washington's observations of the scene, Officer Washington had probable cause to arrest the plaintiff.

C

In any event, defendants Washington and Otero had qualified immunity in this case. Qualified immunity shields government officials performing discretionary functions, such as arrests, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see, e.g., Iqbal, 129 S. Ct. at 1945-46. Notwithstanding the violation of a clearly established constitutional or statutory right, in the case of an arrest, an officer may still establish qualified immunity under federal law by showing either that "it was objectively reasonable for the officer to believe that probable cause existed," or that "officers of reasonable competence could disagree on whether the probable cause test was met." Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987); see also Walczyk, 496 F.3d at 163; Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002). "Normally, it is only the 'plainly incompetent or those who knowingly violate the law' — those who are not worthy of the mantle of office — who are precluded from claiming the protection of qualified immunity." Moore v. Andreno, 505 F.3d 203, 214 (2d Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); see also Caceres v. Port Auth. of N.Y. & N.J., 646 F. Supp. 2d 412, 426 (S.D.N.Y. 2009).

As discussed above, Officer Washington and Sergeant Otero had probable cause to arrest the plaintiff based on the information Officer Washington received from the Castillos and his observations. Even if Officer Washington and Sergeant Otero did not actually have probable cause to arrest, given all of the circumstances, at the least, officers of reasonable competence could have disagreed on whether Officer Washington and Sergeant Otero had probable cause to arrest the plaintiff. Therefore, defendants Washington and Otero were protected by qualified immunity in this case.

D

The plaintiff also brings a § 1983 claim against the City of New York pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). "Municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell, 436 U.S. at 658). Municipalities are not subject to liability under theories of respondeat superior, but rather on the basis that their policies or customs "inflict[ed] the injury upon the plaintiff." Id. "To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2)

causes the plaintiff to be subjected to (3) a denial of a constitutional right." Id.; see also Kahn v. Oppenheimer & Co., No. 08 Civ. 11368, 2009 WL 4333457, at *3 (S.D.N.Y. Dec. 1, 2009).

In the plaintiff's brief and at oral argument, the plaintiff argued that the City had a custom of permitting the Castillos to sell illegal lottery tickets and alcohol from their store. The plaintiff argued that the acquiescence of the police in the Castillos' allegedly illegal conduct encouraged the Castillos to attack the plaintiff. In making this argument, the plaintiff relied on Okin v. Village of Cornwall-On-Hudson Police Department, 577 F.3d 415 (2d Cir. 2009), which held that police officers' implicit approval of domestic violence against the plaintiff constituted a violation of the plaintiff's Due Process Clause rights. In Okin, the plaintiff called the police repeatedly to report incidents of domestic violence, but the arriving police officers laughed at her complaints and expressed camaraderie with her alleged abuser. Id. at 419-426. The Court of Appeals for the Second Circuit found that the police officers "rachet[ed] up the threat of danger to Okin" through an "escalating series of incidents" where the officers ignored Okin's complaints and made the abuser feel that his conduct was sanctioned. Id. at 430.

15

In this case, the plaintiff does not argue that she made, or that the police ignored, any previous complaints against the Castillos. Moreover, the plaintiff has not shown any causal connection between the alleged policy of condoning the sale of illegal lottery tickets and the alleged violation of her constitutional rights. There is no evidence in this case that the police previously condoned violence towards the plaintiff or did anything that caused the threat of violence to the plaintiff to be increased. Because the plaintiff has not shown that the City had a policy or custom that caused the plaintiff's constitutional rights to be violated, there is no basis for her Monell claim against the City.

E

Finally, the plaintiff makes several state law claims against the City defendants, which the City defendants argue must be dismissed because the plaintiff failed to comply with New York's notice of claim requirements. See N.Y. Gen. Mun. Law §§ 50-e, 50-i. Under New York law, a plaintiff asserting state law tort claims against a municipal defendant or its employees must (1) file a notice of claim within ninety days after the claim arises, and (2) commence the action within one year and ninety days after the cause of action accrues. Id. New York courts have held that plaintiffs may seek leave to file a late notice of claim before or after the action has been commenced,

but they must do so within the applicable statute of limitations period. See Pierson v. New York, 439 N.E.2d 331 (N.Y. 1982); see also N.Y. Gen. Mun. Law § 50-e(5).

Several district courts in this Circuit have found that they lack jurisdiction to even consider granting a request to file a late notice of claim because New York law provides that all such applications must be made in New York Supreme Court or in certain county courts. N.Y. Gen. Mun. Law § 50-e(7); Maier v. N.Y. City Police Dep't, No. 08 Civ. 5104, 2009 WL 2915211, at *4 (E.D.N.Y. Sept. 1, 2009) (collecting cases). Other federal district courts have considered applications for leave without addressing the jurisdictional issue. See, e.g., Pilitz v. Inc. Village of Rockville Ctr., 634 F. Supp. 2d 317, 318-19 (E.D.N.Y. 2009).

In any event, in this case, the plaintiff filed a notice of claim on December 29, 2007, more than ninety days after her July 24, 2007 arrest. The plaintiff did not seek leave to file a late notice of claim until she asked the Court for permission to do so in her brief in opposition to the City defendants' motion for summary judgment. That brief was dated September 14, 2009, more than one year and ninety days after the date of the plaintiff's arrest. Under New York law, the plaintiff's failure to seek leave to file a late notice of claim within the statute of limitations period forecloses this Court from granting the

17

extension even if it had jurisdiction to do so. Therefore, the plaintiff's state law tort claims must be dismissed for failure to file a timely notice of claim.

### CONCLUSION

For the reasons stated above, the City defendants' motion for summary judgment is **granted** and the plaintiff's claims against the City defendants are **dismissed**. At oral argument on this motion, counsel for the plaintiff withdrew the plaintiff's pending motion for default judgment against the Castillo defendants. Therefore, the Clerk is directed to close Docket Nos. 34 and 38.

**SO ORDERED.**

Dated:   New York, New York
         March 2, 2010

/s/ John G. Koeltl
John G. Koeltl
United States District Judge